UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SANJA DRINKS-BRUDER,

      Plaintiff,

    v.

NIAGARA FALLS POLICE CLUB, *et al.*,

      Defendants.

                           22-CV-268-LJV
                           DECISION & ORDER

---

On April 6, 2022, the *pro se* plaintiff, Sanja Drinks-Bruder, commenced this action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").  Docket Item 1.  She alleges that the defendants, the Niagara Falls Police Club, Inc. (the "Police Club"), and several Police Club officials, discriminated against her because of her race.  *Id.* at 4, 7, 12-30, 35-36.

On July 18, 2022, after this Court extended the defendants' time to respond to the complaint, Drinks-Bruder sent a letter to Chief United States District Judge Elizabeth A. Wolford that this Court construes as a motion to recuse itself from presiding over this case.  Docket Item 18.  On August 2, 2022, the defendants moved to dismiss the complaint, Docket Item 23; on September 6, 2022, Drinks-Bruder responded, Docket Item 28; and on September 15, 2022, the defendants replied, Docket Item 29.

For the following reasons, Drinks-Bruder's motion for recusal is denied, some of her claims are dismissed with prejudice, several others are subject to dismissal, and one—a Title VII retaliation claim—may proceed.  The defendants' motion to dismiss therefore is granted in part and denied in part, and the remainder of it will be granted unless Drinks-Bruder amends her complaint to address the deficiencies noted below.

## FACTUAL BACKGROUND[1]

Drinks-Bruder is a former Niagara Falls police officer and former member of the Police Club, which is the Niagara Falls police officers' union.  Docket Item 23-2 at 10 (citing Docket Item 1 at 2, 4-5, 22); Docket Item 28 at 2.  She worked for the Niagara Falls Police Department from 1993 until her dismissal in 2022.  Docket Item 28 at 2.  Drinks-Bruder is a Black woman.  Docket Item 1 at 20 ("I am a [B]lack female.").

---

[1] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  In deciding the motion, the court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

Drinks-Bruder has attached several documents to the complaint: (1) correspondence from the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"), Docket Item 1 at 9-11; (2) the charge she filed with the NYSDHR (the "administrative charge"), *id.* at 12-24; (3) supplemental filings to the administrative charge, *id.* at 25-30; (4) the NYSDHR determination and order, *id.* at 31-32; (5) the NYSDHR affidavit of service, *id.* at 33-34; (6) her request for EEOC review of the NYSDHR determination, *id.* at 35-36; and (7) the EEOC dismissal and notice of rights, *id.* at 37.  This Court therefore considers those documents.

The Court does not consider the documents attached to Drinks-Bruder's response to the motion to dismiss, *see* Docket Item 28 at 23-29, because the complaint does not attach or even refer to them.  Any written material that Drinks-Bruder seeks to include in any amended complaint should be attached to the amended complaint or incorporated by reference.

The following facts are taken primarily from the complaint and the documents attached to it, Docket Item 1.  But because the complaint is somewhat disorganized and disjointed, some background facts are taken from the defendants' memorandum in support of the motion to dismiss, Docket Item 23-2, and Drinks-Bruder's response to the motion to dismiss, Docket Item 28.  Those facts simply provide context for the allegations in the complaint and are in no way dispositive of this Court's decision.  Regardless of their source, the facts are viewed in the light most favorable to Drinks-Bruder, and the facts on which this decision is based all come from the complaint and its attachments.

The Police Club has "approx[imately] 65 [] members"; no more than "approx[imately] five" are Black.  *Id.* at 7.  Defendant James Tuttle is the Police Club's general counsel.  *Id.* at 5; Docket Item 23-2 at 10.  Defendant Michael Lee is the Police Club's former president.  Docket Item 1 at 5, 7.  Defendant Steven Kerfoot succeeded Lee as Police Club president.  *Id.* at 7.  All three are white men.  *Id.*; *see also id.* at 22.

The Police Club's collective bargaining agreement grants its members the "right . . . to file grievances" when they encounter employment-related issues.  *Id.* at 16. Drinks-Bruder first filed a grievance in 2009.  Docket Item 28 at 2.  After that, "everything began to change," and her employer, the City of Niagara Falls (the "City"), began to retaliate against her.  *Id.*[2]

Drinks-Bruder files complaints or grievances "when [she] must[,] which is all the time."  Docket Item 1 at 22.  Lee was the only union official who "would speak with" Drinks-Bruder regarding her grievances.  *Id.*  Both Tuttle and a City attorney have "stated many times" that Drinks-Bruder's "grievances have no merit."  *Id.* at 30.

The Police Club discriminated against Drinks-Bruder "for over . . . two years" and continued to do so through the time she commenced this action.  *Id.* at 3.  More specifically, it failed to represent her, "took away [her] benefits illegally," interfered with her "legal paperwork," and retaliated against her.[3]  *Id.* at 4.  What is more, the Police

---

[2] This Court does not consider Drinks-Bruder's allegations of discrimination and retaliation by the City, *see* Docket Item 28 at 2, 21-22, because the City is not a party to this action.  *See* Docket Item 1.  For the same reason, this Court does not consider Drinks-Bruder's allegations that the New York State Public Employment Relations Board discriminated against her.  *See* Docket Item 28 at 18-19.

[3] In the administrative charge, Drinks-Bruder checked boxes indicating that the defendants "[s]uspended [her]," "[d]emoted [her]," "[d]enied her [a] promotion/pay raise," "[d]enied [her] training," "[g]ave [her] different or worse job duties than other workers doing the same job," and "[d]enied [her] leave time or other benefits."  Docket Item 1 at

Club "ignore[d] all [of Drinks-Bruder's] work[-]related issues," "always" sided with the City in employment disputes, and "allow[ed]" the City to take "improper disciplinary actions" against her.  *Id.* at 21.  In fact, the Police Club and the City "willingly work[ed] in concert with one another to cause [Drinks-Bruder] hardship and to force [her] into retirement."  *Id.* at 21-22.

## I.    EARLY INSTANCES OF NON-REPRESENTATION

The Police Club has a long history of failing to represent Drinks-Bruder.  For example, after Drinks-Bruder filed her first grievance in 2009, the Police Club "denied [her] representation" when she was written up after an interaction with a "male prisoner." Docket Item 28 at 2-3.

In late 2019, Gregory Spagnola, a "white union official and officer," witnessed a "white prisoner" commit a "racial hatred incident" against Drinks-Bruder.  *Id.* at 13, 20. Spagnola's original report of the incident included a "positive assessment" of Drinks-Bruder's conduct.  *Id.* at 13.  But when Spagnola learned that Drinks-Bruder was going to report him for discrimination, he filed a second report about the incident with a "negative assessment" of Drinks-Bruder.  *Id.* at 13-14.

Drinks-Bruder filed a complaint about Spagnola's discriminatory conduct in November 2019, but "it was never addressed" and the City "thr[ew it] out."  *Id.* at 20. Spagnola then filed a complaint against Drinks-Bruder based on her complaint; Spagnola's complaint repeated the "lies" from his second report of the underlying

---

15.  But neither the administrative charge nor the complaint includes factual allegations supporting those claims.  *See generally* Docket Item 1.  Nor does Drinks-Bruder explain how the defendants—who are not her employer—could have taken those actions.  *See id.*

incident.  *Id.*  Lee knew that Spagnola "had changed his original [] report of the incident," *id.* at 13, but he and the Police Club did not represent Drinks-Bruder in connection with that incident or her complaint against Spagnola*, see id.* at 13-14, 20.  Drinks-Bruder eventually filed a complaint about her interactions with Spagnola with the NYSDHR, but the agency dismissed it.  *Id.* at 14.

## II.    THE INITIAL SECTION 72 MEETING

Most of Drinks-Bruder's allegations stem from the City's request that she undergo a New York Civil Service Law § 72 ("section 72") evaluation.  Under section 72, an "appointing authority" who believes that "an employee is unable to perform the duties of . . . her position by reason of a disability . . . may require such employee to undergo a medical examination."  N.Y. Civ. Serv. Law § 72(1); *accord* Docket Item 1 at 16 (stating that the City convened a meeting to "force" Drinks-Bruder to schedule an appointment to undergo "medical exams" by a "mental and medical doctor").  The appointing authority must give the employee "[w]ritten notice of the facts" that are the basis for the examination.  N.Y. Civ. Serv. Law § 72(1).  If the employee is found unfit "to perform the duties of . . . her position," she "may be placed on a leave of absence."  *Id.*

On January 10, 2020, Drinks-Bruder "returned to work after taking some time off."  Docket Item 1 at 16.  That day, she "was forced to go to a[n] unscheduled . . . meeting that [she] knew nothing about" in advance.  *Id.*  When she joined the meeting, she "was informed . . . [that] it was a section 72 proceeding."  *Id.*  The City convened it because Drinks-Bruder's "many grievances" apparently raised concerns that she was "unfit for duty."  *Id.*  But Drinks-Bruder was fit for duty, and neither the City nor the Police

Club provided evidence that she was unfit or "need[ed] a mental and medical exam." *Id.* at 23.

Lee, who was at the meeting, told Drinks-Bruder that he "knew nothing about" the proceeding and that the Police Club "did not know what was going on." *Id.* at 16. But he also said that Drinks-Bruder "must continue" with the proceeding, and he assured her that he would give "all" the information to attorney Tuttle, "who would handle it." *Id.* Drinks-Bruder scheduled the medical exam because the City and the Police Club told her that she could not refuse. *Id.* That was false, however; Drinks-Bruder "ha[d] a right to [refuse] any mental or medical exams when there [were] no facts" showing that such exams were necessary. *Id.*

After she scheduled the exam, Drinks-Bruder received "paperwork," including "section 72 proceeding law" and an unsigned "copy of the facts." *Id.* at 16-17. Lee also gave Drinks-Bruder a copy of an email from Tuttle dated January 6, 2020. *Id.* at 17. That email, which showed that the Police Club "g[a]ve the [C]ity an okay to proceed with the section 72 proceeding," contradicted Lee's earlier statement that he did not know about the proceeding. *Id.* But even though the Police Club apparently knew about the section 72 proceeding in advance, it "did not inform [Drinks-Bruder] prior so that [she] could be prepared." *Id.* at 19.

Shortly after the January 10 meeting, Drinks-Bruder did not attend the section 72 exam, and she was then suspended until February 22, 2020. Docket Item 23-2 at 16; *accord* Docket Item 1 at 19 ("I have not been able to return to work since 1/13/2020 although Deputy Faso [] stated I could on 2/22/2020.").

6

### III.    NON-REPRESENTATION

Tuttle, the union attorney, could not represent Drinks-Bruder in connection with the section 72 proceeding due to a conflict of interest: he already was representing the Police Club against Drinks-Bruder in other proceedings that she had initiated.  Docket Item 1 at 18; *see also* Docket Item 23-2 at 15.  So on February 12, 2020, the Police Club retained outside counsel, Robert Boreanaz, to represent Drinks-Bruder in the section 72 proceeding.  Docket Item 1 at 5, 27.

But Drinks-Bruder was not satisfied with Boreanaz's representation because he did not take any steps to defend her.  *See id.* at 7, 20, 26.  Several months later, Drinks-Bruder learned that the Police Club and Tuttle "had told [Boreanaz that] he was limited in representing [her]" and "that he could not represent [her] in any affirmative action[s]" she initiated.  *Id.* at 20; *see also id.* at 5 (alleging that Boreanaz "denied service" to Drinks-Bruder "at [the] urging and request" of the Police Club); Docket Item 28 at 6 (alleging that Tuttle told Boreanaz that "his services were to represent [] Drinks-Bruder for [the] section 72 proceeding and/or as he deems appropriate").

Despite Boreanaz's inaction regarding the section 72 proceeding, the Police Club and Tuttle told Drinks-Bruder that she was being adequately represented.  Docket Item 1 at 19.  Eventually, though, Tuttle told Drinks-Bruder that the Police Club was "tak[ing] away [her] legal representation for [the] section 72 proceeding[]."[4]  *Id.* at 26.  Nevertheless, Boreanaz did not "give[] [Drinks-Bruder] any legal documents ending his

---

[4] In fact, the Police Club "t[ook] away [Drinks-Bruder's] legal representation" only after she filed her administrative charge with the NYSDHR.  Docket Item 1 at 26.

representation" and told her only that he was "waiting on the [Police Club] to let him

know what he can do." *Id.* at 26-27.

## IV.   THE ENSUING DISCIPLINARY PROCEEDINGS

"[E]very[ ]time [Drinks-Bruder ]return[ed] to work" after her suspension, the City

asked her to undergo a section 72 exam.  Docket Item 28 at 16.  After Drinks-Bruder

declined, the City initiated disciplinary proceedings against her under New York Civil

Services Law § 75 ("section 75").[5]  Docket Item 23-2 at 17; *see* Docket Item 1 at 29

(explaining that "the 75's" were "a direct result of the section 72 proceeding").

Whenever the City asked Drinks-Bruder to undergo the section 72 exam, the "union

official" present at the meetings—presumably Tuttle, who represented Drinks-Bruder

during the section 75 proceeding, Docket Item 1 at 29—"s[a]t quietly saying nothing"; he

made no effort to intervene or stop the City's requests.  Docket Item 28 at 16.

On March 16, 2021, Tuttle showed Drinks-Bruder an email indicating that the

Police Club had "asked for arbitration for [her] regarding union matters," including her

"representation, pay[,] and unwarranted suspensions."  Docket Item 1 at 28.  The Police

Club did not consult Drinks-Bruder before requesting arbitration, however, and Drinks-

Bruder did not want to arbitrate because she was concerned that arbitration

proceedings would not follow "proper procedures."  *Id.*  She also wanted to avoid

arbitration because she would not be able to appeal or challenge the arbitrator's

---

[5] Section 75 "establishes protections and procedures for covered employees
facing discipline and provides that they 'shall not be removed or otherwise subjected to
any disciplinary penalty . . . except for incompetency and misconduct shown after a
hearing upon stated charges.'"  *City of Long Beach v. N.Y. State Pub. Emp. Rels. Bd.*,
39 N.Y.3d 17, 23 n.1, 198 N.E.3d 478, 481 n.1 (2022) (quoting N.Y. Civ. Serv. Law §
75(1)).

decision in court if she disagreed with it.  *See id.* at 29 ("I will not accept a demand for arbitration when procedures were not followed and no proper representation was given to me and [] I must accept whatever the outcome and I cannot appeal it." (internal quotation marks omitted)).  What is more, Drinks-Bruder feared that an arbitrator would "side with" the City and the defendants because the defendants are white and have "political [and] professional connections."  *Id.* at 30.

## V.    USE OF ACCRUED VACATION DAYS

In addition to all that, Lee, who was "in charge of payroll records," Docket Item 28 at 12, "willfully and knowingly used [Drinks-Bruder's] accrued [vacation] days to pay [her] without [her] authorization while knowing [she] was collecting unemployment," Docket Item 1 at 6-7.  At the time—spring 2020—both Lee and Drinks-Bruder "had full knowledge that [she] was not allowed to work but was still employed."  *Id.* at 7; *see also* Docket Item 28 at 13 (noting that Drinks-Bruder filed for unemployment after she was told on April 9, 2020, that "she could not return to work").  Lee, the Police Club, and the City initially denied taking "this improper[,] unlawful action."  Docket Item 28 at 13.  But after Drinks-Bruder "submitted" "proof," Lee, the Police Club, and the City admitted that it was "a mistake that cannot be rectified."  *Id.*

## PROCEDURAL BACKGROUND

## I.    ADMINISTRATIVE PROCEEDINGS

Drinks-Bruder believed that she was denied representation "because [she is] a [B]lack female who reports [] actions of discrimination."  Docket Item 1 at 27; *see also id.* at 20.  So on January 11, 2021, she filed a complaint with the NYSDHR alleging that

the Police Club, Lee, and Tuttle[6] discriminated against her because of her race and sex and retaliated against her.[7]  *Id.* at 3, 9, 13-14.  After Drinks-Bruder submitted two supplemental filings, *see id.* at 26-30, the NYSDHR issued a determination dismissing her charge on the merits, *id.* at 31-32.

On October 13, 2021, Drinks-Bruder asked the EEOC to review the NYSDHR determination.  *Id.* at 35-36.  She took issue with several aspects of the NYSDHR investigation, *id.*; *see also id.* at 3, 7 ("NYSDHR did purposely [and] arbitrarily disregard evidence submitted by me during the investigation."), 21, and she said that the Police Club, Lee, and Tuttle "illegally" altered "documents" used in the investigation, *id.* at 36.  The EEOC ultimately adopted the NYSDHR findings and issued a "Dismissal and Notice of Rights," *id.* at 37, which Drinks-Bruder received on January 19, 2022, *id.* at 3.

## II.   PROCEEDINGS IN THIS COURT

On April 6, 2022, Drinks-Bruder commenced this action.  Docket Item 1.  On April 29, 2022, this Court extended the defendants' time to answer, move against, or otherwise respond to the complaint.  Docket Item 3.  On May 2, 2022, Drinks-Bruder moved for electronic filing privileges, Docket Item 6, and the next day, she asked the Clerk of the Court to enter a default against the Police Club, Docket Item 7.  After the

---

[6] The administrative charge does not include Kerfoot as a respondent.  Docket Item 1 at 12-13.

[7] In her complaint in this case, Drinks-Bruder checked the box indicating that she was discriminated against based on race; she did not check the corresponding box for sex discrimination.  Docket Item 1 at 4.  But even if this Court were to consider the allegation of sex discrimination in the NYSDHR complaint and therefore to construe the complaint in this case as alleging sex discrimination, the analysis of Drinks-Bruder's claims would not change.  If Drinks-Bruder wishes to assert claims of sex discrimination, she may do so in an amended complaint.

Clerk entered a default, Docket Item 8, the defendants moved to vacate the default and for a further extension of time to respond to the complaint, Docket Item 9.  On May 31, 2022, Drinks-Bruder responded to that motion, Docket Item 13; on June 2, 2022, the defendants replied, Docket Item 15; and on June 8, 2022, Drinks-Bruder further responded, Docket Item 16.  On July 12, 2022, this Court issued an order granting the motion to vacate, extending the defendants' time to respond to the complaint, and denying Drinks-Bruder's motion for electronic filing privileges.  Docket Item 17.

Unhappy with this Court's decisions, Drinks-Bruder sent a letter to Chief Judge Wolford.  Docket Item 18.  In the letter, Drinks-Bruder noted that the defendants did not consult her before requesting a second extension and suggested that this Court was "bias[ed]" and "purposely left [her] out" of the case.  *Id.* at 1-2.  She also argued that this Court's order vacating the default is "factual evidence of prejudice against" her.  *Id.* at 3; *see also id.* at 4 (suggesting that this Court "abuse[d its] power"); *id.* at 5 (suggesting that this Court "is in fact unethically and unlawfully acting in prejudice against" Drinks-Bruder); *id.* at 6 (arguing that this Court "has already prejudiced this case").  She made the same argument about this Court's decision to deny her request for electronic filing privileges.  *Id.* at 10.  Based on the letter's many allegations of bias, this Court construes it as a motion for recusal.

On August 2, 2022, the defendants jointly moved to dismiss the complaint. Docket Item 23.  The parties then briefed the motion, Docket Items 28 and 29, as noted above.

## DISCUSSION

### I.    MOTION FOR RECUSAL

A judge shall recuse himself "in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), as well as in any proceeding "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," *id.* § 455(b)(1). "[R]ecusal motions are committed to the sound discretion of the district court." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). "In deciding whether to recuse, a judge considers whether 'a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned.'" *Abreu v. Brown*, 2017 WL 922127, at *3 (W.D.N.Y. Mar. 7, 2017) (alterations omitted) (quoting *Lovaglia*, 954 F.2d at 815).

Drinks-Bruder argues that this Court is "prejudice[d]" and "bias[ed]" against her. Docket Item 18 at 2-6, 10. But the only evidence she cites in support of her argument is that this Court has issued decisions with which she is unhappy. *See generally* Docket Item 18. And, in fact, this Court has no reason to be—and is not—prejudiced against or biased for any party in this case. Nor does this Court independently know any facts about this case or about any party.

This Court understands that Drinks-Bruder is a passionate litigant. But a party's disagreement with a court's decisions is not a basis for recusal, and Drinks-Bruder offers no other reason to doubt this Court's impartiality. Because there is no reason why this Court's impartiality might reasonably be questioned, Drinks-Bruder's motion for recusal is denied.

## II.      MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

### A.      Title VII Claims

Title VII prohibits employers and labor unions from discriminating against employees based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. It also prohibits retaliation when an employee opposes such discrimination. *Id.* § 2000e–3(a).

Drinks-Bruder alleges that the defendants discriminated and retaliated against her in violation of Title VII. Docket Item 1. But the defendants argue that all her Title VII claims fail either because they are procedurally barred, Docket Item 23-2 at 23-26, or because the complaint fails to state a Title VII claim, *id.* at 26-37. This Court largely

13

agrees with the defendants.  So—with one exception—unless Drinks-Bruder files an amended complaint addressing the deficiencies noted below, her Title VII claims will be dismissed.

### 1.    Title VII Claims Against Tuttle, Lee, and Kerfoot

The defendants argue that Drinks-Bruder's claims against Tuttle, Lee, and Kerfoot must be dismissed because Title VII does not apply to individuals.  *Id.* at 23-24. In her response, Drinks-Bruder does not make any argument to the contrary.  *See* Docket Item 28.  Nor could she in good faith because "[i]t is well-settled that there is no individual liability under Title VII."  *Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 406 (W.D.N.Y. 2022) (citing *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012)). Therefore, Drinks-Bruder's Title VII claims against Tuttle, Lee, and Kerfoot are dismissed without leave to amend because any amendment would be "futile."  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).[8]

### 2.    Timeliness

"Title VII . . . require[s] that an employee alleging discrimination file a claim with the EEOC [or the equivalent state agency] within 300 days of the discriminatory action." *Mitchell v. N.Y.C. Dep't of Educ.*, 2022 WL 621956, at *7 (S.D.N.Y. Mar. 3, 2022) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015)). "Consequently, 'discrete discriminatory acts are not actionable if time barred.'"  *Vega*,

---

[8] The Second Circuit has cautioned that a court "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco*, 222 F.3d at 112.  But when "better pleading will not cure" a complaint's defect, repleading is "futile" and the court need not grant leave to amend. *Id.*

801 F.3d at 79 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

But the "continuing violation doctrine" provides an exception to the 300-day limitations period.  *See Kitani v. N.Y.C. Transit*, 2022 WL 874781, at *5 (S.D.N.Y. Mar. 24, 2022).  Under that doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Id.* (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004)).  "Conduct that has been characterized as a continuing violation is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'"  *Washington*, 373 F.3d at 318 (quoting *Morgan*, 536 U.S. at 111).

The continuing violation doctrine "does not apply to 'discrete discriminatory acts' like 'termination, failure to promote, denial of transfer, or refusal to hire.'"  *Kitani*, 2022 WL 874781, at *5 (quoting *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010)).  "Moreover, the continuing violation theory is available only if circumstances are such that a reasonable person in the plaintiff's position would not have sued earlier."  *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 217 (S.D.N.Y. 1998).  Accordingly, "[a] claim for breach of [duty of fair representation] accrues when [the] plaintiff first knew, or should have known, of the union's failure to adequately pursue her claim."  *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 500 (S.D.N.Y. 2000).  And if the union "purport[s] to fulfill its duty" of fair representation, then "an unsophisticated employee [may not] realize that her union representative ha[s]

provided inadequate representation," *see Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492-93 (2d Cir. 1995), thus extending the limitations period.

Drinks-Bruder filed her administrative charge on January 11, 2021.  *See* Docket Item 1 at 9.  Therefore, the defendants argue, her Title VII claims are time barred "to the extent that [they are] based on conduct that occurred before March 17, 2020"—300 days before January 11, 2021.  Docket Item 23-2 at 24-26.[9]

 Most of Drinks-Bruder's allegations concern the section 72 proceeding that she learned about on January 10, 2020.  She alleges that the Police Club approved the proceeding and did not give her notice of it.  Docket Item 1 at 16-17.  She also alleges that Lee lied to her when he told her that he and the Police Club did not know about the meeting before it happened.  *Id.*  But those were discrete acts that occurred before March 17, 2020, and therefore are time barred.  *See Vega*, 801 F.3d at 79.  The same reasoning applies to Drinks-Bruder's claim that the Police Club did not represent her in her conflict with Spagnola in late 2019.  *See* Docket Item 28 at 13-14, 20.

But the continuing violation doctrine saves Drinks-Bruder's failure-to-represent claim stemming from the section 72 proceeding.  Drinks-Bruder alleges that the Police Club failed to represent her beginning at the initial section 72 meeting on January 10, 2020.  *See* Docket Item 1 at 16 (describing the January 10 meeting as "unrepresented").[10]  The Police Club retained Boreanaz to represent Drinks-Bruder on

---

[9] Drinks-Bruder insists that her Title VII claims are timely because "[t]he last [section] 75" meeting "was on December 15[,] 2021."  Docket Item 28 at 16.  But the defendants concede the timeliness of Drinks-Bruder's allegations about the Police Club's failure to represent her during her disciplinary proceedings and the improper payment of accrued vacation time.  *See* Docket Item 23-2 at 26; Docket Item 29-1 at 1.

[10] It is difficult to tell from the complaint whether Drinks-Bruder believed that she was adequately represented at the time of the January 10 meeting.  But giving her the

16

February 12, 2020, *id.* at 5, 27—again, before March 17, 2020—and told her that she was adequately represented at that point, *id.* at 19.  But Drinks-Bruder alleges that she was not and that she did not learn that Boreanaz's representation was inadequate until July 2020, when the Police Club told her that Boreanaz could not represent her in any "affirmative action[s]."  *See id.* at 20.

Those allegations create a reasonable inference that Drinks-Bruder did not realize the Police Club had breached its duty of fair representation until after March 17, 2020.  *See Buttry*, 68 F.3d at 1492-93.  And for that reason, the Police Club's alleged failure to represent Drinks-Bruder in connection with the section 72 proceeding is timely under the continuing violation doctrine.

In sum, Drinks-Bruder's Title VII claims related to the following allegations are time barred: (1) the Police Club's approval of the section 72 proceeding; (2) the Police Club's failure to give her advance notice of the section 72 meeting on January 10, 2020; (3) Lee's statement that neither he nor the Police Club knew about the section 72 proceeding before the January 10 meeting; and (4) the Police Club's failure to represent her in connection with the Spagnola conflict.  Those claims therefore are dismissed without leave to amend because better pleading will not change the dates on which those alleged violations occurred.  *See Cuoco*, 222 F.3d at 112.  But Drinks-Bruder's Title VII claims related to the following allegations are not time barred: (1) her representation in connection with the section 72 proceeding; (2) the Police Club's failure

---

benefit of every reasonable inference, this Court finds it plausible that she did not realize that her representation was inadequate during the meeting and that her failure-to-represent claim therefore accrued after March 17, 2020.

to represent her during the disciplinary proceedings; and (3) the payment of her accrued vacation days.

### 3.   Exhaustion

"Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) (citations omitted).  Under a narrow exception to the exhaustion requirement, "claims not raised in an [administrative] complaint may still be part of the complaint later filed in federal court if they are reasonably related to the claim filed with the agency." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (citation and internal quotation marks omitted).  A claim is reasonably related "if the conduct complained of would fall within the scope of the [agency] investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (citation omitted).

The defendants argue that Drinks-Bruder has not exhausted her claim that she was improperly paid using her accrued vacation days.  Docket Item 23-2 at 26.  Drinks-Bruder's response did not address that argument.  *See* Docket Item 28.

Drinks-Bruder's administrative charge focuses on the section 72 proceeding and the ensuing events.  At one point, she refers to a loss of "benefits" used to "pay [her] fraudulently."  Docket Item 1 at 15.  But that single, vague reference is not reasonably related to the complaint's specific allegation that Drinks-Bruder was improperly paid out her vacation days, *id.* at 6-7.  Indeed, rather than providing any facts about the "benefits" the Police Club "took [] away," *id.* at 15, the administrative charge and its supplemental filings spend thirteen pages detailing the section 72 proceeding, the Police Club's alleged failure to represent Drinks-Bruder, and the disciplinary

18

proceedings that followed, s*ee id.* at 16-23, 26-30.  So based on the administrative charge, the NYSDHR did not have notice to investigate any improper payment of vacation time.[11]

Drinks-Bruder's Title VII claim related to the improper payment of her vacation time therefore is subject to dismissal because she did not exhaust her administrative remedies in connection with that claim.  Nevertheless, in light of her *pro se* status, Drinks-Bruder may amend her complaint to include facts showing that she exhausted that claim.  *See Cuoco*, 222 F.3d at 112.

### 4.    Failure to State a Discrimination Claim

"Under Title VII, it is unlawful for a labor union 'to exclude or to expel from its membership, or otherwise discriminate against, any individual because of [her] race, color, religion, sex, or national origin."  *Agosto v. Corr. Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 303 (S.D.N.Y. 2000) (emphasis omitted) (quoting 42 U.S.C. § 2000e–2(c)(1)).  A Title VII action against a union that is not based on a member's exclusion or expulsion is "limited" to a claim that the union "fail[ed] to discharge its duty of fair representation."[12]  *Cooper*, 106 F. Supp. 2d at 501; *McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 421 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 44 (2d Cir. 2010)

---

[11] Drinks-Bruder says that she reported her conflict with Spagnola to the NYSDHR in an earlier charge.  Docket Item 28 at 14.  But she provides few details about the earlier charge, so it is difficult to tell whether she exhausted that claim.  If Drinks-Bruder includes the allegations about the Spagnola conflict in an amended complaint, she should explain exactly what she reported to the NYSDHR and when.

[12] As one court has noted, "the entire concept of permitting a union member to sue her [u]nion for breach of the duty of fair representation (a[ labor law] concept) under Title VII is confusing."  *Cooper*, 106 F. Supp. 2d at 500.

(summary order) (citing *Nweke*, 25 F. Supp. 2d at 220 ("[I]n order to establish a Title VII claim concerning representation by a union of its members' interests, . . . there must first be a finding that the union breached its duty of fair representation." (alterations and internal quotation marks omitted))); *see also Agosto*, 107 F. Supp. 2d at 303 ("It is well established that a union's breach of its duty of fair representation may subject it to liability under Title VII.").

"To establish a *prima facie* Title VII claim for a union's breach of its duty of fair representation, a plaintiff must show that (1) the employer violated the collective bargaining agreement . . . , (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation, and (3) there was some indication that the union's actions were motivated by discriminatory animus." *Daniels v. Niagara Mohawk Power Corp.*, 2007 WL 925759, at *6 (W.D.N.Y. Mar. 26, 2007) (collecting cases); *see also McIntyre*, 658 F. Supp. 2d at 421. The defendants argue that Drinks-Bruder has not plausibly alleged the second and third prongs of this test. Docket Item 23-2 at 26.[13]

### a.    Duty of Fair Representation

A union's "duty of fair representation . . . derives 'from the union's statutory role as exclusive bargaining agent.'" *Dillard v. SEIU Loc. 32BJ*, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 74 (1991)). "Because federal policy gives unions wide latitude to act in their representative

---

[13] Although neither party addresses the first prong—the employer's breach of the collective bargaining agreement—this Court assumes for the purposes of this decision that initiation of the section 72 proceeding and the ensuing disciplinary proceedings were such a breach.

capacity," a plaintiff alleging breach of the duty of fair representation bears "an enormous burden."  *Id.* (citation omitted).

"In order to breach the duty of fair representation, [a] union's actions must be . . . arbitrary, discriminatory, or in bad faith, and there must be a causal connection between the union's actions and the employee's injuries."  *Moore v. Am. Fed'n of State, Cnty., and Mun. Emps. Loc. 1095*, 2022 WL 262347, at \*7 (W.D.N.Y. Jan. 28, 2022), *report and recommendation adopted*, 2022 WL 1497959 (W.D.N.Y. May 12, 2022) (citing *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010); *Gordon v. Health & Hosps. Corp.*, 2007 WL 2021853, at \*2 (E.D.N.Y. July 12, 2007)).  "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time . . . , the union's behavior is so far outside a wide range of reasonableness as to be irrational."  *Vaughn*, 604 F.3d at 709 (citation and internal quotation marks omitted).  "A union's acts are discriminatory when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives."  *Id.* (citation and internal quotation marks omitted).  "Bad faith, which encompasses fraud, dishonesty, and other intentionally misleading conduct, requires proof that the union acted with an improper intent, purpose, or motive."  *Id.* at 709-10 (citation and internal quotation marks omitted).  If a union's actions are not arbitrary, discriminatory, or taken in bad faith, the union has not breached its duty of fair representation; "even negligence on the union's part does not give rise to a breach."  *Id.* at 709 (citation omitted).

The defendants argue that Drinks-Bruder has not plausibly alleged that the Police Club's actions were arbitrary, discriminatory, or taken in bad faith.  Docket Item 23-2 at 29-32.  Drinks-Bruder disagrees.  *See, e.g.*, Docket Item 1 at 7 (alleging that the

Police Club acted "arbitrarily and in bad faith due to prejudice and retaliation").  This Court agrees with the defendants.

First, Drinks-Bruder has not plausibly alleged that the Police Club's actions were so unreasonable "as to be irrational" and therefore arbitrary.  *See Vaughn*, 604 F.3d at 709.  For example, she does not plead facts establishing that the Police Club had the responsibility—or even the ability—to prevent the section 72 proceeding or that it was obligated to give her advance notice of it.  *See* Docket Items 1 and 28.  She alleges that the Police Club failed to represent her, but she also says that Lee, a Police Club representative, was present at the meeting on January 10, 2020, and that the Police Club later hired Boreanaz to represent her.  Docket Item 1 at 5, 16, 27.

Drinks-Bruder takes issue with the Police Club's limitation of the scope of Boreanaz's representation, *id.* at 20, but she does not explain why that limitation was in any way inappropriate, let alone so unreasonable that it was arbitrary, *see* Docket Items 1 and 28.  And while she was unhappy with Boreanaz's performance as her attorney, Docket Item 1 at 7, 20, 26, she provides no reason why the Police Club's retention of him might have been irrational, *see* Docket Items 1 and 28.

Similarly, Drinks-Bruder alleges that the Police Club requested arbitration of her conflict with the City without her consent, Docket Item 1 at 28-29, but she does not explain why that request was irrational or arbitrary, *see* Docket Items 1 and 28.  And even if the Police Club should have obtained her consent before requesting arbitration, Drinks-Bruder does not allege that it forced her to actually arbitrate.  *See* Docket Items 1 and 28.  On the contrary, the complaint attaches a notarized letter suggesting that she refused arbitration.  Docket Item 1 at 28-30.

Nor has Drinks-Bruder plausibly alleged that the Police Club acted in bad faith. In fact, she describes only one incident even suggesting "dishonesty" or "intentionally misleading conduct," *see Vaughn*, 604 F.3d at 709-10: Lee's false statement that neither he nor that Police Club knew about the section 72 proceeding before January 10, 2020, *see* Docket Item 1 at 16-17.  But according to Drinks-Bruder, shortly after Lee made that statement, he gave her an email directly contradicting it.  *Id*.  That forecloses any reasonable possibility that Lee intentionally tried to conceal information from Drinks-Bruder; rather, it suggests that he merely misspoke or made a mistake and then corrected that mistake.  His statement therefore does not plausibly suggest bad faith.

Finally, while Drinks-Bruder asserts that the Police Club's actions were discriminatory, she does not explain why they were "unrelated to legitimate union objectives."  *See Vaughn*, 604 F.3d at 709.  Courts have found that legitimate union objectives include improving wages and working conditions, protecting jobs, and promoting safety.  *See Perry v. Int'l Transp. Workers' Fed'n*, 750 F. Supp. 1189, 1198 (S.D.N.Y. 1990) (citing *Berman Enters. Inc. v. Loc. 333, United Marine Div.*, 644 F.2d 930, 935 n.8 (2d Cir. 1981)).  This Court finds that ensuring representation of its members also is a legitimate union objective.  And surely, retaining outside counsel to represent Drinks-Bruder is related to that objective—even if it did not achieve it.

In sum, Drinks-Bruder has not plausibly alleged that the Police Club's actions were arbitrary, discriminatory, or taken in bad faith, as is required to maintain a Title VII claim for breach of duty of fair representation.  *See Moore*, 2022 WL 262347, at *7.  To be sure, both the complaint and the response to the motion to dismiss repeat

conclusions that might satisfy these requirements.[14]  But such conclusory allegations cannot defeat a motion to dismiss.  *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to defeat a motion to dismiss].").  And while the conduct that Drinks-Bruder describes may amount to errors of judgment, even negligence does not establish that a union breached its duty of fair representation.  *See Vaughn*, 604 F.3d at 709.

For that reason, Drinks-Bruder's Title VII discrimination claims are subject to dismissal.  But again in light of her *pro se* status, she may amend her complaint to provide specific, factual allegations showing that the Police Club acted arbitrarily, discriminatorily, or in bad faith.

### b.    Discriminatory Motivation

A plaintiff bringing a Title VII breach of fair duty of representation claim also must show that "there was some indication that the union's actions were motivated by discriminatory animus." *Daniels*, 2007 WL 925759, at *6.  To defeat a motion to dismiss, the plaintiff "need only give plausible support to a minimal inference of discriminatory motivation."  *See Vega*, 801 F.3d at 84 (citation omitted); *Littlejohn*, 795

---

[14] *See, e.g.*, Docket Item 1 at 7 (alleging that the Police Club "has never assisted [Drinks-Bruder] properly and has breached its duty of fair representation arbitrarily and in bad faith due to prejudice and retaliation"); *id.* at 29 (alleging that the Police Club's request for arbitration "is another arbitrary, bad faith[,] and discriminatory/retaliatory action"); Docket Item 28 at 9 (alleging that the Police Club's failure to provide advance notice of the section 72 proceeding "was arbitrary and in bad faith as well as discriminatory"); *id.* at 19 ("[T]he [Police Club] has been discriminatory as well as acted in bad faith and been arbitrary [sic].").

F.3d at 311.[15]  "An inference of discrimination can arise from circumstances including,
but not limited to, [1] 'the [defendant's] criticism of the plaintiff's performance in
ethnically degrading terms; [2] its invidious comments about others in the employee's
protected group; [3] the more favorable treatment of employees not in the protected
group; [4] the sequence of events leading to the plaintiff's discharge'[; or 5] . . . when an
employer replaces a terminated or demoted employee with an individual outside the
employee's protected class."  *Littlejohn*, 795 F.3d at 312-13 (citations omitted); *see also*
*Daniels*, 2007 WL 925759, at *8 (noting that a plaintiff bringing a Title VII claim against
his union did not present "any direct or circumstantial evidence of discriminatory animus
on the part of [his union]").  Although "actions or remarks made by decisionmakers that
could be viewed as reflecting a discriminatory animus" may give rise to an inference of
discrimination, *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996),
"'stray remarks' alone do not support a discrimination suit," *Danzer v. Norden Sys., Inc.*,
151 F.3d 50, 56 (2d Cir. 1998).

        The defendants argue that Drinks-Bruder has not plausibly alleged that the
Police Club acted with discriminatory motivation.  Docket Item 23-2 at 32-35.  Although
Drinks-Bruder repeatedly says otherwise, *see* Docket Item 28 at 5-6, 9, this Court again
agrees with the defendants.

        To start, Drinks-Bruder has not alleged that any of the defendants—or any other
Police Club officials—made any comments about her race.  *See* Docket Items 1 and 28.
She alleges that the defendants have said that her grievances are meritless, but not that

---

        [15] While most cases addressing the burden of a Title VII plaintiff concern an
employer's alleged discrimination, this Court sees no reason why the same principles
should not apply to Title VII cases involving a union's alleged discrimination.

the defendants linked the merit of her grievances to her race in some way.  Docket Item 1 at 30.  So Drinks-Bruder has not provided even a "stray remark[]" to support her claim of racial animus.  *See Danzer*, 151 F.3d at 56.

Second, Drinks-Bruder has not alleged that white union members who were similarly situated to her were treated more favorably.  *See Littlejohn*, 795 F.3d at 312-13.  In fact, she provides only one example of a white coworker who underwent a section 72 proceeding, and she alleges that the Police Club "did not represent" him in that proceeding either.  Docket Item 28 at 20.[16]

Finally, the sequence of events leading to Drinks-Bruder's suspension and eventual termination does not suggest discriminatory animus on the part of the Police Club.  Logically, the City—not the Police Club—suspended and terminated Drinks-Bruder.  Absent additional factual allegations, Drinks-Bruder's conclusory statement that the City and the Police Club conspired to force her into early retirement, Docket Item 1 at 21-22, does not establish that the Police Club played any role in her suspension and termination.

In sum, Drinks-Bruder has not offered anything but her own conclusions that the Police Club acted with discriminatory motivation.  She alleges generally that white officers were treated better than officers of color, that white officers who violated rules were promoted, and that she was treated poorly because of her race.  Docket Item 28 at 3, 14, 17, 19-21.  But other than her own say-so, she does not plead anything to link

---

[16] While Drinks-Bruder also alleges that her coworker "was able to retire with full benefits," she has not alleged that she herself was eligible for retirement or that she and her coworker were otherwise similarly situated.  *See* Docket Item 28 at 20.  Moreover, the City, which is not a defendant here—and not the Police Club, which is a defendant—presumably made the decision allowing the coworker to retire with benefits.

race-based discrimination to any action adverse to her.  Her Title VII discrimination

claims therefore are subject to dismissal on that ground as well.  But again in light of her

*pro se* status, Drinks-Bruder may amend her complaint to add allegations about the

Police Club's discriminatory animus.

### 5.    Failure to State a Retaliation Claim

"To make out a *prima facie* case of retaliation by a union [under Title VII], a

plaintiff must show that[:] (1) she was engaged in an activity protected under Title VII

and known to the union; (2) she suffered adverse union action; and (3) there was a

causal connection between the protected activity and the union's actions."  *Dillard*, 2015

WL 6913944, at *8 (italicization added) (quoting *Agosto*, 107 F. Supp. 2d at 309).  "A

plaintiff engages in protected activity when she[:] (1) opposes employment practices

prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an

investigation, proceeding, or hearing arising under Title VII."  *Davis v. N.Y. State Dep't*

*of Corrs. Attica Corr. Facility*, 110 F. Supp. 3d 458, 462 (W.D.N.Y. 2015) (citation and

internal quotation marks omitted)).

"To qualify as protected activity," a complaint or charge of discrimination "must

[be] based 'on a good faith, reasonable belief that [the complainant] was opposing an

employment practice made unlawful by Title VII.'"  *Id.* (emphasis omitted) (quoting *Kelly*

*v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)).

"Mere subjective good faith belief is insufficient; the belief must be reasonable and

characterized by objective good faith." *Id.* (alterations and emphasis omitted) (quoting *Kelly*, 716 F.3d at 16).[17]

The defendants argue that Drinks-Bruder's conclusory allegations do not plausibly suggest that the Police Club retaliated against her.  Docket Item 23-2 at 35-37. In response, Drinks-Bruder reiterates her claim of retaliation but provides little by way of specific allegations.  *See* Docket Item 28.

This Court largely agrees with the defendants: most of Drinks-Bruder's allegations about retaliation are conclusory and therefore insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  But she makes two specific allegations of retaliation: (1) that Lee "knowingly falsified payroll records" and "paid [Drinks-Bruder using] accrued [vacation] days" because she "claim[ed] unemployment," Docket Item 28

---

[17] It seems that the focus of this inquiry used to be on whether a plaintiff provided facts from which an inference of discrimination could reasonably be drawn.  *See, e.g.*, *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1179 (2d Cir. 1996) (noting that the plaintiff might not have "passed the good faith reasonable[ness] test" if the only evidence of a hostile work environment was an "isolated comment" (alteration in original)); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (plaintiff did not have a reasonable belief that she was discriminated against based on gender because "there was no semblance of gender-oriented motivation in the events or conversations" she described).

But more recently, courts have focused instead on whether a complaint or charge in based on a claim that the plaintiff suffered discrimination "related to [her] membership in a protected class."  *See Wilson v. N.Y. & Presbyterian Hosp.*, 2021 WL 9493971, at *12 (E.D.N.Y. June 22, 2021); *see also Bamba v. Fenton*, 758 F. App'x 8, 13 (2d Cir. 2018) (summary order) (plaintiff did not engage in protected activity when she complained that she was "discriminated [against] and defamed" but did not allege that those actions were race-based); *Washington v. CT Scoop Shops LLC*, 2022 WL 686301, at *8 (D. Conn. Mar. 8, 2022) (plaintiff did not engage in protected activity when he complained about "food labeling" because his complaint was "not related to discrimination on a basis prohibited by Title VII"); *Thomas v. Town of Southeast*, 336 F. Supp. 3d 317, 327 (S.D.N.Y. 2018) (32-year-old plaintiff complaining of age discrimination did not have a reasonable belief that the relevant statute was being violated because it protected only people who are at least 40 years old).

at 12-13; *see also* Docket Item 1 at 6-7; and (2) that after she filed her administrative charge, the Police Club "t[ook] away" her representation for the section 72 proceeding, Docket Item 1 at 26.

Drinks-Bruder's retaliation claim based on the payment of her vacation days fails because she has not satisfied the first element of a *prima facie* retaliation claim: that she engaged in a protected activity.  She says that on April 9, 2020, she was "told she could not return to work on that day or any day afterwards."  Docket Item 28 at 13.  And she alleges that from April 9, 2020, to May 4, 2020, Lee, who "was in charge of payroll records," paid out her vacation days "because instead of using her accrued days as pay[,] [Drinks-Bruder] claim[ed] unemployment" during that period.  Docket Item 1 at 6-7; Docket Item 28 at 12-13.  These allegations seem to suggest that Lee retaliated against Drinks-Bruder by paying her with accrued vacation time after she sought unemployment benefits.  But seeking unemployment benefits is not a protected activity under Title VII.  *See Davis*, 110 F. Supp. 3d at 462 ("A plaintiff engages in protected activity when she[:] (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding, or hearing arising under Title VII.").  So Drinks-Bruder's allegations about the use of her vacation days do not plausibly give rise to a Title VII retaliation claim.

But Drinks-Bruder's other retaliation claim—that the Police Club terminated her legal representation because she filed an administrative charge—survives, at least at this early stage.  So long as she had a reasonable, good faith basis to believe that the defendants violated Title VII, Drinks-Bruder engaged in protected activity by filing the administrative charge, *see id.*; she "need not establish that the conduct [s]he opposed

29

was in fact a violation of Title VII," *see Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).  The administrative charge's allegations of racial discrimination establish that Drinks-Bruder had such a belief.  *See* Docket Item 1 at 20, 22, 27; *cf. Bamba*, 758 F. App'x at 13; *Washington*, 2022 WL 686301, at *8; *Thomas*, 336 F. Supp. 3d at 327.  And terminating Drinks-Bruder's legal representation shortly after she filed the charge surely was an adverse action sufficient to satisfy the second element of a *prima facie* retaliation claim.

The defendants argue that the allegation that the Police Club "t[ook] away" Drinks-Bruder's representation refers only to the Police Club's representation of Drinks-Bruder rather than Boreanaz's representation.  Docket Item 23-2 at 36.  This Court is not convinced that the defendants' interpretation of the complaint is correct, however, especially because Drinks-Bruder suggests that she expected to receive a notice from Boreanaz terminating his representation of her.  *See* Docket Item 1 at 26.  In fact, Drinks-Bruder says, she "still want[s] his representation."  *Id.*  Those allegations plausibly suggest that after Drinks-Bruder filed the administrative charge, the Police Club stopped retaining Boreanaz to represent her.

Finally, the temporal proximity between the filing of Drinks-Bruder's administrative charge and the Police Club's alleged termination of her legal representation establishes a plausible causal connection between the two events.  *See Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 229 (E.D.N.Y. 2010) ("[C]ausality may be inferred through timing alone where the temporal proximity between a[ defendant's] learning of protected activity and the adverse [] action following thereafter are 'very close.'" (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001))).

Drinks-Bruder filed the administrative charge on January 11, 2021.  Docket Item 1 at 9.

She does not allege exactly when the Police Club terminated her representation, but

she informed the NYSDHR of the termination in a letter dated March 2, 2021.  *Id.* at 26.

So no more than about seven weeks elapsed between the two events.  And "district

courts in this [c]ircuit have generally found that a passage of two months between the

protected activity and the adverse action seems to be the dividing line" when analyzing

whether temporal proximity allows an inference of causation.  *Martin*, 704 F. Supp. 2d at

230 (internal quotation marks omitted) (collecting cases).

Because Drinks-Bruder has raised a viable Title VII retaliation claim based on her

allegation that the Police Club retaliated against her by terminating her legal

representation, the defendants' motion to dismiss that claim is denied.  And in light of

her *pro se* status, Drinks-Bruder may amend her complaint to correct the deficiencies in

her other retaliation claims.  *See Cuoco*, 222 F.3d at 112.  But unless she does so, the

defendants' motion to dismiss her retaliation claims other than the claim based on the

termination of her representation will be granted.

### B.    NYSHRL Claims

Like Title VII, the NYSHRL prohibits labor unions from discriminating against their

members based on, *inter alia*, race.  N.Y. Exec. Law § 296(1)(c).  And like Title VII, the

NYSHRL also prohibits retaliation against a person who opposes such discrimination.

*Id.* § 296(1)(e).

The defendants argue that Drinks-Bruder's NYSHRL claims are "procedurally

and substantively infirm."  Docket Item 23-2 at 37.  Drinks-Bruder's response does not

substantively address her state law claims.  *See* Docket Item 28.

31

1.      **Election of Remedies**

The NYSHRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights."  N.Y. Exec. Law § 297(9).  Accordingly, NYSHRL claims, "once brought before the NYSDHR, may not be brought again as a plenary action in another court." *Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 317 F. Supp. 3d 695, 700 (W.D.N.Y. 2018) (quoting *York v. Ass'n of the N.Y.C. Bar*, 286 F.3d 122, 127 (2d Cir. 2002)).[18]

The defendants argue that this election-of-remedies rule bars most of Drinks-Bruder's NYSHRL claims.  Docket Item 23-2 at 37-38.  Drinks-Bruder's response does not address this argument.  *See* Docket Item 28.

As discussed above, Drinks-Bruder's administrative charge—and the supplemental documents she filed with the NYSDHR—describe the Police Club's alleged failure to represent her in connection with the section 72 proceeding and the ensuing disciplinary proceedings.  *See* Docket Item 1 at 13-30.  The NYSDHR dismissed Drinks-Bruder's charge on the merits.  *Id.* at 31-32.  Drinks-Bruder therefore cannot now assert NYSHRL claims connected to the allegations in her administrative charge—namely, the allegations about the section 72 proceeding and the ensuing disciplinary proceedings.

---

[18] This bar applies only when an administrative agency dismisses a charge on the merits, not when dismissal is made "on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled."  N.Y. Exec. Law § 297(9).

Drinks-Bruder's NYSHRL failure-to-represent claim based on the conflict with Spagnola, however, may not be barred by the election-of-remedies rule: she alleges that the NYSDHR "dismissed" the charge containing allegations about the Spagnola incident "capriciously and arbitrar[il]y," but she does not say whether it was dismissed on the merits.  *See* Docket Item 28 at 14.  Giving Drinks-Bruder the benefit of every reasonable inference, this Court finds that her state law claims relating to the Police Club's failure to represent her in the Spagnola conflict are not barred by the election-of-remedies rule.[19]

Drinks-Bruder's NYSHRL claims based on the section 72 proceeding and the ensuing disciplinary proceedings therefore are dismissed without leave to amend because any amendment would be "futile."  *See Cuoco*, 222 F.3d at 112.  But because they were not adequately raised in the administrative charge, *see supra* at 18-19, her NYSDHR claims relating to the misuse of her accrued vacation days are not barred by the election-of-remedies rule.  And for now, neither is her failure-to-represent claim based on the Spagnola conflict.

## 2.   Timeliness

Next, the defendants argue that all Drinks-Bruder's NYSHRL claims are untimely. Docket Item 23-2 at 38-39.  This Court need not—and does not—address the timeliness of the claims that are barred by the election-of-remedies rule because those claims are dismissed without leave to amend.  The Court therefore considers the timeliness of only

---

[19] In any amended complaint, Drinks-Bruder should explain the ground on which the NYSDHR dismissed the charge containing allegations about the Spagnola conflict.

the NYSHRL claims based on (1) the Spagnola conflict, and (2) payment of Drinks-Bruder's vacation days.

Under New York state law, the statute of limitations for "an action to recover upon a liability . . . created or imposed by statute" typically is three years.  N.Y. C.P.L.R. § 214(2).  But "a claim against a union for violating the duty of fair representation is subject to a four-month statute of limitations."  *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (citing N.Y. C.P.L.R. § 217(2)(a)).

Drinks-Bruder's NYSHRL claim arising from the Police Club's failure to represent her during the Spagnola conflict therefore is time barred because she commenced this action on April 6, 2022—far longer than four months after the incident occurred in late 2019.[20]  But this Court interprets Drinks-Bruder's allegations about the payment of her vacation days as a retaliation claim, *see supra* at 29-31, and the statute of limitations for such a claim is three years, *see Isbell v. City of New York*, 316 F. Supp. 3d 571, 585-86 (applying a three-year statute of limitations to plaintiff's retaliation claim).

Accordingly, Drinks-Bruder's NYSHRL failure-to-represent claim relating to the Spagnola conflict is time barred and dismissed without leave to amend because better pleading will not change the dates on which the conflict occurred.  *See Cuoco*, 222 F.3d at 112.  But her NYSHRL retaliation claim based on the payment of her vacation days, which occurred in April 2020 and May 2020, is not time barred.

---

[20] In fact, Drinks-Bruder did not even raise the claims relating to that incident until September 6, 2022, when she responded to the motion to dismiss.  *See generally* Docket Items 1 and 28.

### 3.     Failure to State a Claim

Finally, the defendants argue that Drinks-Bruder has failed to state either a

discrimination or a retaliation claim under the NYSHRL.  Docket Item 23-2 at 40-41.

Because Drinks-Bruder's NYSHRL claims relating to the Police Club's failure to

represent her are procedurally barred, this Court need only consider whether she has

stated an NYSHRL retaliation claim regarding the allegation that she was improperly

paid using her accrued vacation time.

"A plaintiff alleging retaliation in violation of the NYSHRL must show that[:] (1) he

or she engaged in a protected activity by opposing conduct prohibited thereunder; (2)

the defendant was aware of that activity; (3) [the plaintiff] suffered an adverse action

based upon his or her activity; and (4) there was a causal connection between the

protected activity and the adverse action."  *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 194

A.D.3d 999, 1004-05, 148 N.Y.S.3d 238, 245-46 (2d Dep't 2021).  "Protected activities

include 'actions taken to protest or oppose statutorily prohibited discrimination.'"

*Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021) (alteration

omitted) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)).

As discussed, Drinks-Bruder alleges that Lee paid her using accrued vacation

days because she "claim[ed] unemployment" during a period when she was unable to

work.  Docket Item 28 at 12-13.  But "claim[ing] unemployment," *id.*, is not an action that

Drinks-Bruder took to oppose discriminatory conduct—by either the Police Club or the

City—and thus is not a protected activity.[21]

---

[21] It is true that under the NYSHRL, "a plaintiff may bring a retaliation claim
stemming from an employer's opposition to her unemployment benefits application."
*Wermann v. Excel Dentistry, P.C.*, 2014 WL 846723, at *3-4 (S.D.N.Y. Feb. 25, 2014).
But such opposition is an adverse action relevant to the third prong of the test, not a

Drinks-Bruder's allegations about the use of her vacation time therefore do not plausibly allege retaliation under the NYSHRL, so her remaining NYSHRL retaliation claim is subject to dismissal. But again in light of her *pro se* status, Drinks-Bruder may amend her complaint to explain whether she was retaliated against for some other reason.

III.    **LEAVE TO AMEND**

Although Drinks-Bruder has not asked for leave to amend her complaint, *see* Docket Item 28, the defendants urge this Court to treat her response to the motion to dismiss as a motion to amend and to consider the allegations raised in that filing "in the interest of judicial economy," *see* Docket Item 29 at 6-8. They also ask that this Court deny Drinks-Bruder leave to amend her complaint again because any amendment would be futile. *Id.* But for the reasons stated throughout this opinion, because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and especially in light of her *pro se* status, *see Cuoco*, 222 F.3d at 112, the Court grants Drinks-Bruder 45 days to file an amended complaint that corrects the deficiencies noted above.

Drinks-Bruder is advised that an amended complaint is intended to completely replace the prior complaint and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (citations omitted); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). She is further

---

protected activity under the first prong. *See id.* In other words, a defendant might retaliate against a plaintiff *by* interfering with her unemployment benefits but not *for* claiming unemployment benefits.

advised that any written material she seeks to include in any amended complaint should be attached to the amended complaint or incorporated by reference.

Finally, this Court reiterates that Drinks-Bruder has leave to amend her complaint regarding only her Title VII discrimination and retaliation claims against the Police Club and her NYSHRL retaliation claim based on the payment of her vacation days.  Her remaining claims—other than her viable Title VII retaliation claim based on the termination of her legal representation—are dismissed without leave to amend.

## CONCLUSION

For the reasons stated above, the following claims are dismissed with prejudice:

- Drinks-Bruder's Title VII claims against Tuttle, Lee, and Kerfoot;

- Drinks-Bruder's Title VII claims based on:

  - the Police Club's approval of the section 72 proceeding;

  - the Police Club's failure to give her advance notice of the section 72 proceeding;

  - Lee's statement that neither he nor the Police Club knew about the section 72 proceeding; and

  - the Police Club's failure to represent her in connection with the Spagnola conflict; and

- Drinks-Bruder's NYSHRL claims based on the Police Club's failure to represent her.

Drinks-Bruder's motion for recusal, Docket Item 18, is DENIED.  The defendants' motion to dismiss, Docket Item 23, is GRANTED in part as noted above, is DENIED with respect to Drinks-Bruder's Title VII retaliation claim based on the termination of her

37

representation, and will be granted with respect to all other claims unless Drinks-Bruder amends her complaint, within 45 days, to correct the deficiencies noted above.  No later than 30 days after any amended complaint is filed, the defendants may answer, move against, or otherwise respond to the amended complaint.  If Drinks-Bruder does not file an amended complaint within 45 days, then her remaining claims will be dismissed as noted above.


      SO ORDERED.

      Dated:   February 16, 2023
               Buffalo, New York



          */s/ Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE